INHABITANTS OF FARMINGTON *vs.* SYLVESTER STANLEY and others.

*Official bond. Powers of selectmen. Their neglect no discharge of sureties.*

The failure of the selectmen to examine the accounts of a town treasurer, as directed by R. S., c. 6, § 152, will not affect the liability of the sureties upon his bond.

Nor will a surety be released if the selectmen, failing to detect an error in addition, certify the treasurer's account to be correct, when, in fact, there is a deficit; even if this certificate be made known to the surety soon after its entry upon the treasurer's books, and while the treasurer has attachable assets enough to cover the deficit, though he subsequently dies insolvent.

ON REPORT.

DEBT on bond given by Leonard Keith, as treasurer of the town of Farmington, for the year 1863-4, with the defendants as sureties, conditioned that he ' shall faithfully discharge all the duties of said office.' Keith's actual receipts as treasurer, during the municipal year aforesaid, were $12,320.85 ; but, from an error in adding up the items, the footing up on the books was only $10,230.85, being $2,090 less than the true amount. He credited himself with $8,165.90 paid out for the town and with a balance in the treasury March 4, 1864, carried to his next account, of $2,064.95, making $10,230.85, balancing his apparent indebtedness as shown by the false addition. The selectmen, on March 4, 1864, not knowing or discovering this error in addition, certified that they had examined the accounts, and that they ' finding the same correct, allow the same,' which certificate was entered upon the treasurer's book, and soon afterward seen by Stanley, one of the sureties. At that time Keith had a large stock of goods exposed to attachment, amply sufficient to secure Stanley had he then known of the defalcation, which was not discovered till after Keith had died insolvent.

The selectmen did not make the quarterly examinations of the treasurer's accounts required by R. S., c. 6, § 152.

Inhabitants of Farmington v. Stanley.

Keith was treasurer for several years prior to his death Jan. 22, 1866, and for each year after 1861 there was a defalcation.

The plaintiffs claimed that the difference between the amount in the treasury at beginning of the municipal year 1863-4, $1,556.72, and the balance there at the end of same year, $2,064.95—being $508.23—should be added to the $2,090 error in footing, to ascertain the whole amount of his defalcation, making it $2,598.23.

Keith, in 1865-6, as treasurer, deposited monies with the Sandy River National Bank, and there was deposited to the credit of the treasurer, at the time of his death, $3,650, which was paid to his successor in office. It was claimed that this sum was derived from the sale of certain bonds of the town, issued in 1865 for a specific purpose, and admitted that $1,000 of it came from this source.

After Keith's death, there was found among his papers evidences of town indebtedness paid by him, after his election as treasurer in 1865, to the amount of $15,519.34, which had not been entered upon the treasurer's book; but, with the deposit aforesaid, this was allowed upon his liabilities for the years 1865-6, in a settlement made between the selectmen and Keith's administrator, without the knowledge or consent of the defendants. Some of Keith's bondsmen for the several years during which defalcations occurred, had deposited with the town treasurer a sum sufficient to pay about forty-five per cent of the defalcation of each year, under an agreement that this was in nowise to operate as a release.

*S. Belcher*, for plaintiffs.

*E. F. Pillsbury*, for defendants.

The claim for the $508.23 difference between the amounts in the treasury at the beginning and close of the year, as by the treasurer's book, is based upon the assumption that there was, in fact, no money in the treasury, of which assumption there is no evidence, but the contrary appears by the treasurer's books, the correctness of which is certified by the selectmen, and must be considered correct except where proved to be erroneous.

The bank deposit was unappropriated funds in Keith's hands at

the time of his death, even if he and the selectmen intended to apply it to the payment of a particular debt. It had not been so applied, but could have been drawn out by Keith at any time, and applied as he pleased.

The application by the selectmen and Keith's administrator of this deposit, and the $15,519.34 payments made by Keith for the town after March 1, 1865, to the diminution of his liabilities for the year 1865-6, was not consented to by the defendants, and was unauthorized by law, which directs its application to the oldest debt. *Milliken* v. *Tufts*, 31 Maine, 497; *Goss* v. *Stinson*, 3 Sumn. 98; *Readfield* v. *Shaver*, 50 Maine, 37; *Parker* v. *Green*, 8 Met. 144; *Sandwich* v. *Fish*, 2 Gray, 299.

The amount so applied was much larger than the whole indebtment claimed for the four preceding years.

The defendants are discharged from liability by the laches of the municipal officers, who did not make the examination required by law, nor kept any account with the treasurer, but settled wholly by his books, which they assumed and certified to be correct, and allowed his accounts without even verifying the footings.

The law requiring examinations was designed to protect the sureties as well as towns; and the former sign the bonds under the implied promise that this duty will be performed, and their interests protected to this extent.

The settlement with, and certificate of the selectmen, made March 4, 1864, discharged the sureties. It was notice to them of payment by the principal, which, even if erroneous, will discharge the surety, if by relying upon it he lose the opportunity of securing himself. *Baker* v. *Briggs*, 8 Pick. 122; *Carpenter* v. *King*, 9 Met. 511; *Harris* v. *Brooks*, 21 Pick. 195.

APPLETON, C. J. This is an action of debt against the sureties of Leonard Keith upon a bond dated March 3, 1863, and given by him as treasurer of the plaintiff town, for the year ensuing. The evidence shows that Keith was a defaulter.

The defendants resist liability on various grounds.

By R. S. of 1857, c. 6, § 135, reënacted by R. S. of 1871, c. 6, § 152, every treasurer is required to render an account of the state of the finances of the town, and to exhibit all books and accounts pertaining to his office, to the municipal officers of the town when required, and the officers are required to examine such treasurer's account as often as once in three months. But this has not been done. The sureties, however, are not thereby released. They covenanted that their principal should faithfully discharge the duties of his office. They are not released because other officers failed to do their duty. However negligent the selectmen might have been, the obligation was none the less stringent upon the treasurer that he should do his duty irrespective of the negligence of other town officers.

When the selectmen of Farmington examined the accounts of their treasurer, there was a mistake in his addition, which they failed to discover. They thereupon gave the following certificate:

'FARMINGTON, MARCH 4, 1864.

'We have examined the accounts of Leonard Keith, treasurer of Farmington for 1863-4, and finding the same correct, allow the same.

ALVAN CURRIER,   <em>Selectmen</em><br>HIRAM RUSS,   <em>of</em><br>H. B. STOYELL,   <em>Farmington.</em>'

The selectmen are agents of the town with limited powers. Without special authority given them, they have no right to release a witness who is liable to the town in case a judgment is recovered against it. *Carlton* v. *Bath*, 2 Foster 559. In *Horn* v. *Whittier*, 6 N. H. 94, an action was brought upon a bond given by the collector to the selectmen, for the faithful performance of his duty as collector, and one of the selectmen undertook to release the action. But the court held the release of no effect; that no one of the selectmen could release without authority from the town. The decision does not rest on the ground that the release was by one alone, but that no effectual release could be given without the authority of the town by vote. Here was a mistake in the treasurer

in addition.    It was  not perceived by the selectmen.    'It is ad-
mitted,' observes Story, J., in  *U. S.* v. *Kirkpatrick*,  9  Wheaton
720,  referring  to a bond  given  to  the  United States,  'that mere
laches, unaccompanied with fraud, forms no discharge of  a contract
of  the nature between  private individuals.    Such  is the clear result
of  the authorities.'    The  selectmen  had no right to discharge  the
treasurer nor his sureties from these  liabilities  under  their bond in
case of a breach.    If  they  could  not do this  directly, without au-
thority from the town, still less could they do it indirectly.    It was
the neglect of  the treasurer in his addition of  the amount received
that his defalcation was not then  perceived.    In  *Porter* v. *Stanley*,
47 Maine, 515, there was a settlement  made with the collector, by
the selectmen, but it was held  to  bind  neither the town nor  the
sureties of  the collector, inasmuch as their  settlement  was  not  in
accordance with the legal rights of the parties.

Nothing  in the case indicates any error  in  the  settlement made
by the selectmen with the administrator of  Keith's  estate,  adverse
to the defendants.

Some of  the  bondsmen  of  Keith for  the  several  years  during
which his defalcation occurred, have deposited $3,600 to meet these
liabilities.    This amount, which pays about forty-five per cent of
the defalcation of each  year, is to be  divided  *pro rata*.    The de-
fendants are entitled to a reduction accordingly, from the amount of
their liability.

Judgment for plaintiffs for $2,090,  with  interest  from  March 4,
1864, less the defendants' proportion of $3,600  paid by the bonds-
men of  Keith, as stated in the report.

CUTTING,  WALTON,  DICKERSON,  and  DANFORTH,  JJ.,  con-
curred.